UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00979

FRED NEKOUEE, individually,                          :
                                                     :
                 Plaintiff,                          :
                                                     :
vs.                                                  :
                                                     :
GP RETAIL I LLC, a Colorado limited liability        :
company;                                             :
                                                     :
VITAMIN COTTAGE NATURAL FOOD                          :
MARKETS, INC., a Colorado corporation;               :
                                                     :
and                                                  :
                                                     :
MICHAELS STORES, INC., a Delaware                    :
corporation;                                         :
                                                     :
                 Defendants.                         :
_____/

**<u>COMPLAINT</u>**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, GP RETAIL, LLC, a Colorado limited liability company; VITAMIN COTTAGE NATURAL FOOD MARKETS, INC., a Colorado corporation; and MICHAELS STORES, INC., a Delaware corporation; (sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant GP RETAIL I LLC owns The Pavilion Shopping Center with an address

of 4330 South College Avenue, Ft. Collins, Colorado , in Larimer County ("The Pavilion Shopping Center").

3.      Defendant VITAMIN COTTAGE NATURAL FOOD MARKETS, INC.'s store, Natural Grocers, is located in The Pavilion Shopping Center with an address of 4318 S. College Avenue, Ft. Collins, Colorado 80525 ("Natural Grocers").

4.      Defendant MICHAELS STORES, INC.'s store, Michaels, is located in The Pavilion Shopping Center with an address of 4330 S. College Avenue, Ft. Collins, Colorado 80525 ("Michaels").

5.      Famous Footwear, is located in The Pavilion Shopping Center with an address of 4352 S. College Avenue, Ft. Collins, Colorado 80525 ("Famous Footwear").

6.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of The Pavilion Shopping Center.   The Defendants' The Pavilion Shopping Center Natural Grocers, Michaels, Famous Foot wear, and O'Reilly Auto Parts are located in and do business within this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.      Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.      The Pavilion Shopping Center is a shopping center.

10.      The Pavilion Shopping Center is a place of public accommodation.

11.      Michaels in The Pavilion Shopping Center is a place of public accommodation.

12.     Natural Grocers in The Pavilion Shopping Center is a place of public accommodation.

13.     Famous Footwear in The Pavilion Shopping Center is a place of public accommodation.

14.     Pier 1 Imports in The Pavilion Shopping Center is a place of public accommodation.

15.     T. J. Maxx in The Pavilion Shopping Center is a place of public accommodation.

16.     Defendants are each responsible for complying with the obligations of the ADA.

17.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

18.     Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

19.     On his way to the mountains and sight-seeing, Fred Nekouee visited The Pavilion Shopping Center which forms the basis of this lawsuit on October 1, 2019; February 4, 2019; May 10, 2019; and March 4, 2020; and he bought goods and sought to avail himself of the goods and services at The Pavilion Shopping Center on such dates.

20.     Fred Nekouee visited and bought goods at Natural Grocers on February 4, 2019; May 10, 2019; October 1, 2019; and March 4, 2020.

21.     Fred Nekouee visited and bought goods at Michaels in The Pavilion Shopping Center on February 4, 2019 and May 10, 2019.

22.     Fred Nekouee visited Famous Footwear and bought goods there on February 4,

2019 and on March 4, 2020.

23.     Fred Nekouee visited T. J. Maxx in The Pavilion Shopping Center and bought goods there on February 4, 2019.

24.     Fred Nekouee visited Pier 1 in The Pavilion Shopping Center and bought a greeting card there on February 4, 2019

25.     Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018; May 8, 2019; October 2, 2019; and March 4, 2020.

26.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

27.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

28.     Fred Nekouee plans to return to The Pavilion Shopping Center to avail himself of the goods and services offered to the public at The Pavilion Shopping Center, Natural Grocers, Michaels, T. J. Maxx, and Famous Footwear.

29.     The Plaintiff has definite plans to return to the area and to The Pavilion Shopping Center, Natural Grocers, Michaels, T. J. Maxx, and Famous Footwear in May or late September, early October 2020.

30.     The Pavilion Shopping Center, Natural Grocers, Michaels, and Famous Footwear are on the way from the heavy equipment auction and dealerships he visits to the mountains and sight-seeing.

31.     The Plaintiff likes the broad range of healthy grocery items for sale at Natural Grocers in The Pavilion Shopping Center.

32.     The Plaintiff plans to return to Natural Grocers to shop.

33.     The Plaintiff likes to shop at Michaels for personal items and gifts.

34.     The Plaintiff plans to return to Michaels to shop.

35.     The Plaintiff likes the goods, including its socks, and prices at Famous Footwear.

36.     The Plaintiff plans to return to Famous Footwear to shop.

37.     For the reasons set forth in paragraphs 18-36 and 50, Fred Nekouee plans to return to The Pavilion Shopping Center and to Natural Grocers, Michaels, T. J. Maxx, and Famous Footwear.

38.     The Plaintiff has encountered architectural barriers at The Pavilion Shopping Center.

39.     The barriers to access that the Plaintiff encountered at The Pavilion Shopping Center have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access The Pavilion Shopping Center, and have impaired his use of the restrooms there.

40.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

41.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

42.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

43.     On his visit to The Pavilion Shopping Center, the Plaintiff encountered excessively steep slopes in its parking lot.

44.     In the parking lot in front of Natural Grocers, the portion of the van accessible parking space furthest from the curb has a running slope steeper than 1:48 and steeper than 3.1%.

45.     In the men's restroom in Michaels, the accessible toilet compartment is less than 60

inches wide.

46.     The Plaintiff encountered and observed barriers to access in the men's restroom in Michaels; and so, he also tried to use the women's restroom in Michaels, in which women's restroom he also encountered and observed barriers to access.

47.     The Plaintiff encountered and observed barriers to access in one unisex restroom in Natural Grocers; and so, he also tried to use the other unisex restroom in Natural Grocers, in which restroom he also encountered and observed barriers to access.

48.     The Plaintiff is deterred from visiting The Pavilion Shopping Center even though he enjoys its goods, because of the difficulties he will experience there until The Pavilion Shopping Center is made accessible to him in a wheelchair.

49.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to The Pavilion Shopping Center as described but not necessarily limited to the allegations in paragraph 56 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

50.     Fred Nekouee desires to visit The Pavilion Shopping Center not only to avail himself of the goods and services available at The Pavilion Shopping Center but to assure himself that The Pavilion Shopping Center is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of The Pavilion Shopping Center without fear of discrimination.

51.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

52.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, <u>inter alia</u>, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

53.     Physical conditions that exist at The Pavilion Shopping Center are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 56 below

54.     Preliminary inspections of The Pavilion Shopping Center show that violations of the ADA exist as set forth in paragraph 56 below.

55.     The violations of the ADA that Fred Nekouee personally encountered or observed at The Pavilion Shopping Center include, but are not limited to, those set forth in paragraph 56 below.

56.     At The Pavilion Shopping Center:

**PARKING**

a.  (i) In the parking lot, there are pot holes in the pavement on the way from the parking spaces for disabled patrons to Title Boxing Club, T.J. Maxx and Designs with a change in level from the surrounding pavement of greater than 0.5 inches.   (ii) This change of level is in violation of Federal Law 2010; ADAAG §§ 502.4 and 303.3.   (iii) Due to these pot holes, the plaintiff had to move into the traffic lane to avoid them while moving in his wheelchair.   (iv) The action required to reduce the change in level in this area of the parking lot and to fill these pot holes is easily accomplishable and able to be carried out without much difficulty or expense.

b.     (i) In the parking lot in front of Natural Grocers, the portion of the van accessible parking space furthest from the curb has a running slope steeper than 1:48 and steeper than

3.1%.   (ii) In the parking lot in front of Natural Grocers, the portion of the van accessible parking space furthest from the curb, shown in the photograph below, has a running slope steeper than 1:48 and as steep as about 6.5%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) Due to the steep slope of this parking space, the Plaintiff's wheelchair was made unstable.   (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





c.    (i) In the parking lot in front of Crafts Home Décor, the running slope of the access aisle serving the parking spaces for disabled patrons is steeper than 1:48 and is steeper than 3.1%.   (ii) The running slope of this access aisle is steeper than 1:48 and is as steep as about 4.5%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) Due to its

running slope, the Plaintiff's wheelchair was made unstable while moving in this access aisle.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot in front of Michaels, handrails are not provided around the ramp shown in the photograph below.   (ii) Handrails are not provided around this ramp along the accessible route to Michaels where the running slope is greater than 1:11.5 in a 12-foot length and a ramp run rise of greater than 6 inches, in violation of Federal Law 2010; ADAAG §§ 405.8 and 505.   (iii) The Plaintiff observed the lack of handrails around this ramp, and it deters him from shopping at Michaels.   (iv) The action required to install handrails around this ramp or to reduce the slope of this ramp is easily accomplishable and able to be carried out without much difficulty or expense.



e.    (i) In the parking lot in front of Natural Grocers, handrails are not provided around the ramp shown in the photograph below.   (ii) Handrails are not provided around this ramp along the accessible route to Natural Grocers where the ramp run rise is greater than 6 inches, in violation of Federal Law 2010; ADAAG §§ 405.8 and 505.   (iii) The Plaintiff observed the lack of handrails around this ramp, and it deters him from shopping at Natural Grocers.   (iv) The action required to install handrails around this ramp or to reduce the slope of this ramp is easily accomplishable and able to be carried out without much difficulty or expense.



    **f.**  (i) In the parking lot in front of T. J. Maxx, there is a hole in the concrete walking surface at the gutter leading to the curb ramp shown in the photographs below.   (ii) This hole in the concrete walking surface contains a change of level of greater than 0.5 inches and is about 1 inch deep, in violation of Federal Law 2010; ADAAG §§ 303.3 and 405.4. (iii) While moving in his wheelchair, the Plaintiff had to avoid this hole in the concrete walking surface to avoid stopping or tipping his wheelchair.   (iv) The action required to reduce this change in level or to patch this hole is easily accomplishable and able to be carried out without much difficulty or expense.





**MEN'S RESTROOM IN MICHAELS**

g.    (i) The time for the door to the men's restroom in Michaels to close from an open

position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time

for this door to close from an open position of 90 degrees to 12 degrees from the latch is

less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short closing time of this door, this door closed on the Plaintiff's wheelchair before he could move through this doorway.   (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

h.      (i) For the men's restroom in Michaels, the entrance door pull side maneuvering clearance in a latch approach perpendicular to the doorway with a closer is less than 54 inches.   (ii) This entrance door's pull side maneuvering clearance in a latch approach perpendicular to the doorway with a closer is less than 54 inches and is only about 45 inches where the wll clearance is at least 24 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to this lack of adequate clearance space, the Plaintiff required assistance to enter this restroom.   (iv) The actions required to relocate this door and to recess this wall are easily accomplishable and able to be carried out without much difficulty or expense.

i.     (i) In the men's restroom in Michaels, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both side of the door is easily accomplishable and able to be carried out without much difficulty or expense.

j.     (i) In the men's restroom in Michaels, the accessible toilet compartment is less than 60 inches wide.   (ii) This accessible toilet compartment is less than 60 inches wide

and is only about 42 inches wide, in violation of Federal Law 2010; ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the lack of adequate width in this toilet compartment to maneuver his wheelchair, the Plaintiff required assistance to enter and exit the compartment.   (iv) The action required to increase the width of this toilet compartment by moving the partitions is easily accomplishable and able to be carried out without much difficulty or expense.

k.      (i) In the men's restroom in Michaels, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet. (iv) The actions required to relocate this rear wall grab bar and to move the side partition of the toilet compartment are easily accomplishable and able to be carried out without much difficulty or expense.

l.      (i) In the men's restroom in Michaels, the bottom of the rear wall grab bar is less than 1.5 inches above the top of the toilet tank.   (ii) The space between the top of the toilet tank and the bottom of this rear wall grab bar is less than 1.5 inches and is only about .75 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to the small space between the top of the toilet tank and the bottom of this rear wall grab bar, the Plaintiff had even more difficulty using it to help transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) In the men's restroom in Michaels, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.    (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.    (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.    (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

n.    (i) In the men's restroom in Michaels, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.    (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches and a maximum of 18 inches, in violation of Federal Law 2010; ADAAG § 604.2.    (iii) Due to the location of this toilet, the Plaintiff had even more difficulty trying to reach the toilet paper and using the side wall grab bar.    (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

o.    (i) In the men's restroom in Michaels, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.    (ii) The flush control for this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG § 604.6.    (iii) Due to the location of this flush control, the Plaintiff could not flush the toilet from his wheelchair.    (iv) The action required to replace the toilet tank with a tank that has the flush control on the other side is easily

accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN MICHAELS**

p.    (i) The force needed to open the entrance door to the women's restroom in Michaels is greater than 5 pounds.   (ii) The force needed to open the entrance door to the women's restroom in Michaels is about 7 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the women's restroom in Michaels.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

q.    (i) The time for the door to the women's restroom in Michaels to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short closing time of this door, this door closed on the Plaintiff's wheelchair before he could move through this doorway.   (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) For the women's restroom in Michaels, the entrance door pull side maneuvering clearance in a latch approach perpendicular to the doorway with a closer is less than 54 inches.   (ii) This entrance door's pull side maneuvering clearance in a latch approach perpendicular to the doorway with a closer is less than 54 inches and is only about 46 inches

where the wll clearance is at least 24 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to this lack of adequate clearance space, the Plaintiff required assistance to enter this restroom.   (iv) The actions required to relocate this door and to recess this wall are easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the women's restroom in Michaels, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both side of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of the door is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the women's restroom in Michaels, the accessible toilet compartment is less than 60 inches wide.   (ii) This accessible toilet compartment is less than 60 inches wide and is only about 42 inches wide, in violation of Federal Law 2010; ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the lack of adequate width in this toilet compartment to maneuver his wheelchair, the Plaintiff required assistance to enter and exit the compartment.   (iv) The action required to increase the width of this toilet compartment by moving the partitions is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in Michaels, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side

and 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet. (iv) The actions required to relocate this rear wall grab bar and to move the side partition of the toilet compartment are easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in Michaels, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the women's restroom in Michaels, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The flush control for this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG § 604.6.   (iii) Due to the location of this flush control, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with a tank that has the flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.

**UNISEX RESTROOM 1 IN NATURAL GROCERS**

x.    (i) For unisex restroom 1 in Natural Grocers, to the right when coming down the hallway facing the restrooms, the entrance door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 12 inches.  (ii) The entrance door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is less than 12 inches and is only about 2 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to the lack of clearance, the Plaintiff required assistance to exit this restroom in his wheelchair.

y.     (i) In unisex restroom 1 in Natural Grocers, the accessible toilet stall is less than 60 inches wide.   (ii) This accessible toilet compartment is less than 60 inches wide and is only about 42 inches wide, in violation of Federal Law 2010; ADAAG §§ 604.8.1 and 304.3.   (iii) Due to its narrow width, the Plaintiff required assistance to access the toilet. (iv) The action required to move the short sidewall next to the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In unisex restroom 1 in Natural Grocers, the height of the toilet seat above the floor, measured to the top of the seat, is not between 17 and 19 inches.   (ii) The seat height of the water closet above the finish floor measured to the top of the seat is not between 17 and 19 inches, in violation of Federal Law 2010; ADAAG § 604.4.   (iii) Due to the height of this seat above the floor, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet seat and getting up from this toilet seat to transfer back to his wheelchair.   (iv) The action required to replace this toilet seat or the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

aa.    (i) In unisex restroom 1 in Natural Grocers, the rear wall grab bar is less than 36

inches long.   (ii) This rear wall grab bar is less than 36 inches long and is only about 24 inches long, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet.   (iv) The actions required to move the side wall of the toilet compartment and to replace this rear wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In unisex restroom 1 in Natural Grocers, there is not clear floor space 30 inches wide in front of the sink.   (ii) The clear floor space in front of this sink is less than 30 inches and is only about 23 inches, which space does not allow for a forward approach in a wheelchair, in violation of Federal Law 2010; ADAAG §§ 606.2 and 305.5.   (iii) Due to the lack of clear floor space, the Plaintiff tried but could not make a forward approach to this sink in his wheelchair.   (iv) The action required to relocate this sink is easily accomplishable and able to be carried out without much difficulty or expense.   (The insulation on the drain pipe under this sink is in need of repair.)

cc.   (i) In the unisex restroom 1 in Natural Grocers, the change in level at the floor drain is greater than 0.25 inches.   (ii) The change in level at this floor drain is greater than 0.25 inches, in violation of Federal Law 2010; ADAAG § 303.2.   (iii) While moving in his wheelchair in this restroom, the wheel of the Plaintiff's wheelchair got stuck in this drain due to such change in level.   (iv) The action required to reduce this change of level at the floor drain is easily accomplishable and ble to be carried out without much difficulty or expense.

dd.   (i) In the unisex restroom 1 in Natural Grocers, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor

and is as high as about 62 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from shopping at Natural Grocers.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

ee.     (i) In the unisex restroom 1 in Natural Grocers, the operation of the control for the paper towel dispenser requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the control for the paper towel dispenser requires tight grasping, pinching, or twisting of the wrist and cannot be operated with a closed fist or loose grip, in violation of Federal Law 2010; ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate the control for the paper towel dispenser with a closed fist or loose grip.   (iv) The action required to replace this paper towel dispenser with an ADA compliant dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**UNISEX RESTROOM 2 IN NATURAL GROCERS**

ff.     (i) The time for the door to unisex restroom 2 in Natural Grocers, to the left when coming down the hallway facing the restrooms, to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short closing time of this door, this door closed on the Plaintiff's wheelchair before he could move through this doorway.   (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In unisex restroom 2 in Natural Grocers, the entrance door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches.   (ii) This entrance door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches and is only about 54 inches due to the location of the sink, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering space, the Plaintiff required some assistance to exit this restroom. (iv) The action required to relocate the sink in this restroom is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In unisex restroom 2 in Natural Grocers, the accessible toilet compartment is less than 60 inches wide.   (ii) This accessible toilet compartment is less than 60 inches wide and is only about 41 inches wide, in violation of Federal Law 2010; ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the narrow width of this toilet compartment, the Plaintiff had difficulty maneuvering his wheelchair to use the toilet.   (iv) The action required to move the side wall of this toilet compartment or the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In unisex restroom 2 in Natural Grocers, the height of the toilet seat above the floor, measured to the top of the seat, is not between 17 and 19 inches.   (ii) The seat height of the water closet above the finish floor measured to the top of the seat is not between 17 and 19 inches, in violation of Federal Law 2010; ADAAG § 604.4.   (iii) Due to the height of this seat above the floor, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet seat and getting up from this toilet seat to transfer back to his wheelchair.   (iv) The action required to replace this toilet seat or the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

jj.    (i) In unisex restroom 2 in Natural Grocers, the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar is less than 36 inches long and is only about 24 inches long, in violation of Federal Law 2010; ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet.   (iv) The actions required to move the side wall of the toilet compartment and to replace this rear wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

kk.    (i) In the unisex restroom 2 in Natural Grocers, the change in level at the floor drain is greater than 0.25 inches.   (ii) The change in level at this floor drain is greater than 0.25 inches, in violation of Federal Law 2010; ADAAG § 303.2.   (iii) The Plaintiff observed this change of level at the floor drain in this restroom, and it deters him from patronizing Natural Grocers.   (iv) The action required to reduce this change of level at the floor drain is easily accomplishable and ble to be carried out without much difficulty or expense.

ll.    (i) In the unisex restroom 2 in Natural Grocers, the operation of the control for the paper towel dispenser requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the control for the paper towel dispenser requires tight grasping, pinching, or twisting of the wrist and cannot be operated with a closed fist or loose grip, in violation of Federal Law 2010; ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate the control for the paper towel dispenser with a closed fist or loose grip.   (iv) The action required to replace this paper towel dispenser with an ADA compliant dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

mm.    (i) In unisex restroom 2 in Natural Grocers, the distance from the centerline

of the toilet to the side wall is not between 16 and 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches and a maximum of 18 inches and is about 23 inches, in violation of Federal Law 2010; ADAAG § 604.2.   (iii) Due to the location of this toilet, the Plaintiff had even more difficulty trying to reach the toilet paper and using the side wall grab bar.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the unisex restroom 2 in Natural Grocers, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is as high as about 61 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not reach this coat hook to hang up his coat, and he observed the height of this coat hook above the floor, and it deters him from shopping at Natural Grocers.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**FAMOUS FOOTWEAR**

oo.   (i) The time for the entrance door to Famous Footwear to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short closing time of this door, this door closed on the Plaintiff's wheelchair before he could move through this doorway.   (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

57.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

58.     The discriminatory violations described in paragraph 56 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

59.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

60.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

61.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

62.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

63.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

64.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

65.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

66.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant

Plaintiff injunctive relief, including an order to require the Defendants to alter The Pavilion Shopping Center, Natural Grocers, Michaels, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.     Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*